PATRICK CHARLES McKENNA, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 12795

January 28, 1982                    639 P.2d 557

*Howard C. Jones,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Patrick Charles McKenna appeals from a conviction for murder for which he was sentenced to death. At issue is whether the trial court erred in permitting a court-appointed psychiatrist who examined McKenna to testify as to admissions made by McKenna during his psychiatric examination.

A psychiatrist, Franklin D. Master, M.D., was appointed by the court under NRS 178.415 to inquire into the sanity of McKenna. During the psychiatrist's examination, McKenna apparently discussed the circumstances surrounding the murder of a cellmate at the Clark County jail. Over the defendant's objection, the psychiatrist was permitted to testify at trial that

McKenna had admitted he had "exploded and killed J. J. Nobles."

We have recently held that statements made by a defendant to a psychiatrist during a court ordered mental examination may not be used to impeach the defendant's testimony. Esquivel v. State, 96 Nev. 777, 617 P.2d 587 (1980). In *Esquivel* we commented, "[A] subject being examined by a court appointed physician should feel free in such a clinical climate to discuss all the facts relevant to the examination without the guarded fear that statements may be used against him. Fair play dictates nothing less." 96 Nev. at 778, 617 P.2d at 587.

We think that the same rationale applies to the case before us. Fair play does indeed dictate that our trial courts not appoint a psychiatrist to examine an accused and then employ the confidential contents of the interview to obtain a conviction. We agree with the decision in Collins v. Auger, 428 F.Supp. 1079 (S.D.Iowa 1977), that the introduction of this kind of evidence violates the defendant's right to due process.

> [I]t is fundamentally unfair to use defendant's incriminating admissions to a psychiatrist during a psychiatric examination as part of the prosecution's case to establish his guilt. It is immaterial whether the court ordered examination was at the request of defendant or the prosecution or whether it was to determine his capacity to aid in his own defense or his mental condition at the time of the crime. *Id.* at 1082.[1]

Furthermore, it would be impossible to meet the objectives of a court appointed examination if the defendant knew that his statements could be used to convict him. McKenna's right to due process guaranteed under the fourteenth amendment was therefore violated by the introduction of evidence concerning admissions made to a court appointed psychiatrist.

Since admission of this testimony amounted to a violation of federal constitutional rights, we are obliged to apply the test established in Chapman v. California, 386 U.S. 18 (1966). This court must be able to declare its belief that the constitutional error complained of was harmless beyond a reasonable doubt. *Id.* at 24.

---

[1] This view is also consistent with the recent United States Supreme Court decision in Estelle v. Smith, 101 S.Ct. 1866 (1981). The Supreme Court held that a defendant's fifth amendment privilege against self-incrimination was violated by the introduction of testimony concerning admissions made during a court ordered psychiatric examination. The psychiatrist was permitted to testify to these admissions during the penalty phase of the trial.

The comments made by McKenna were a primary component of the prosection's case. In arguing for admission of the doctor's testimony the prosecutor stated that the testimony was necessary to obtain a conviction since the remaining case was "somewhat tenuous."[2] Applying the *Chapman* standard, it is within the realm of possibility that, absent the constitutionally forbidden admissions contained in the psychiatrists' testimony, honest, fair-minded jurors might have brought in a lesser verdict. Under these circumstances, it is impossible for us to say that the state has demonstrated, beyond a reasonable doubt, that the evidence did not contribute to McKenna's conviction. We therefore reverse and remand for new trial.

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, Sr. J.,[3] concur.

---

[2]The prosecutor's view is supported by the record. The eyewitness testimony relied upon was from two inmates, felons, who received favorable treatment after giving statements to police. Only one witness, Rossi, actually testified at trial. Jones committed suicide before the trial and a transcript of his testimony at an earlier proceeding was read into the record. Jones's testimony was that at 1:30 a.m. he saw McKenna strangle his victim with his hands for about thirty seconds. The other witness, Rossi, saw a different episode occurring at 3:30 a.m. and in which McKenna strangled his victim with his arm for some five minutes. The pathology report said death was caused by ligature with the aid of a piece of cloth or other tying device. There were a number of other discrepancies. When combined with the unreliable nature of the witnesses and the accessibility of the victim to a number of other prisoners, these factors form what could very well have been described as a "tenuous case."

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE CAMERON BATJER. Nev. Const., art. 6, § 19; SCR 10.