Rose, J.,
dissenting:
The Fifth Amendment privilege against self-incrimination applies to a defendant throughout trial, both during the guilt and the sentencing phases.[1] In this case, Dzul was well aware of his Fifth Amendment right against self-incrimination, but chose to waive it by continuing to assert his innocence. Therefore, while instructive, the cases of Estelle v. Smith[2] and McKune v. Lile[3], are not on point because they addressed the issue of asserting the privilege against self-incrimination and the adverse consequences that flowed from the exercise of that privilege.
Rather, Brown v. State[4] is on point. In Brown, the district court judge used a psychological report administered at Lakes Crossing in sentencing Brown, even though Brown had not been warned that any statements he provided to the health care professional, who wrote the report, could be used against him. At sentencing, the judge demanded that Brown admit his guilt but he refused to do so. We held that “the district court violated [Brown’s] Fifth Amendment rights by considering his Tack of remorse’ when he *698 still had a constitutional right to maintain his innocence and by threatening a harsher sentence if [Brown] refused to admit his guilt.”[5] We, therefore, concluded that “requiring [Brown] to either express remorse or receive a harsher sentence violated [Brown’s] Fifth Amendment rights and constituted an abuse of discretion.”[6] I conclude that our holding in Brown governs this case.
Here, Dzul’s claim that he received a harsher sentence for maintaining his innocence is not as clear as in the Brown case, but the record sufficiently demonstrates that he received a greater penalty because he maintained his innocence. In particular, Dzul maintained his innocence in the sexual psychological interviews, and John Pacalt used it against Dzul in his psychosexual report. The district court considered the psychologists’ opinions, and in part, denied Dzul’s probation based on Pacalt’s report, where he opined that Dzul’s denial of responsibility for the offense was a fact that increased Dzul’s risk to reoffend. Therefore, I conclude that this case should be remanded for a new sentencing hearing because the district court abused its discretion by considering the fact that Dzul refused to admit guilt when it imposed Dzul’s sentence.
The majority’s analysis characterizes the choice between probation and prison time as a benefit or a penalty. I think it is better to jettison the benefit/penalty analysis because it seems to be used to sidestep some important constitutional holdings. The choice at sentencing is between two penalties, one is a sentence of probation, where a defendant serves no prison time, and the other is a sentence of prison time. Both are penalties, with one harsher than the other, as Justice Stevens observed in his dissent in McKune: “The plurality’s glib attempt to characterize these consequences as a loss of potential benefits rather than a penalty is wholly unpersuasive.”[7]
On a similar note, the majority’s use of McKune in the present case is unpersuasive. In McKune, an incarcerated sex offender was given the choice to either participate in a sex offender treatment program, which required him to sign an “Admission of Responsibility” form, or refuse to participate and thereby receive a reduction in incentive level and a corresponding transfer from a medium-security to a maximum-security part of the prison.[8] Here, Dzul was given the choice to either admit his guilt and possibly receive a sentence of probation, or maintain his innocence and receive a sentence of prison time.
*699 In the event we are presented with a factual situation as confronted in Estelle and McKune, where a defendant does assert his constitutional rights and that fact is used against him in a psy-chosexual evaluation, I would prefer to adopt the analysis of Justice Stevens rather than the Rehnquist Court plurality analysis used by the majority in this case. And in doing so, we should bear in mind our decision in Brown and also in McKenna v. State,[9] where this court reversed a murder conviction because the prosecutor presented the testimony of a psychiatrist who had examined McKenna pursuant to a court order to determine his competence to stand trial.
Because I conclude that our holding in Brown governs this case and that Dzul should receive a new sentencing hearing, I respectfully dissent.

Estelle v. Smith, 451 U.S. 454, 462 (1981).

Id.

 536 U.S. 24 (2002) (plurality opinion).

 113 Nev. 275, 934 P.2d 235 (1997).

Id. at 291, 934 P.2d at 245.

Id.

McKune, 536 U.S. at 64 (Stevens, J., dissenting).

Id. at 30 (plurality opinion).

 98 Nev. 38, 39, 639 P.2d 557, 558 (1982).