# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
MARIANN HARRIS,
Respondent.

No. 64913

FILED

MAY 08 2017



## ORDER OF REVERSAL AND REMAND

This is an appeal from a district court order granting a presentence motion for a new trial following a conviction, pursuant to a jury verdict of first-degree murder, child abuse and neglect with the use of a deadly weapon, and two counts of child abuse and neglect. Eighth Judicial District Court, Clark County; Abbi Silver, Judge.

This case concerns the homicide of a 14-month-old girl caused by blunt force head trauma. The timeframe of the victim's fatal skull fracture implicated respondent Mariann Harris and investigators also questioned the father of Harris' children, Armani Foster. On the morning the victim died, Homicide Detective Boucher from the Las Vegas Metropolitan Police Department interviewed Harris and Foster. That same day, Child Protective Services (CPS) took custody of Harris' and Foster's children, and police taped off the couple's residence for several days. Harris went to California to stay with her family. Detectives submitted a case against only Harris and police arrested her in California. Prior to opening statements at Harris' trial, the State submitted a proposed jury instruction on flight, which the district court took under consideration. After the jury returned guilty verdicts on all four counts, the court granted Harris' motion for a new trial based on prejudicial prosecutorial misconduct in violation of Harris' Fifth, Sixth, and

Fourteenth Amendment rights under both the U.S. and Nevada Constitutions.

"The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent palpable abuse." *Domingues v. State*, 112 Nev. 683, 695, 917 P.2d 1364, 1373 (1996) (internal quotation marks omitted). Further, we apply the following two-step analysis when considering a claim of prosecutorial misconduct: (1) "whether the prosecutor's conduct was improper," and (2) "whether the improper conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008).

The State argues that the district court abused its discretion in granting Harris' motion for a new trial. As an initial contention, the State asserts that Harris failed to object to the prosecutor's comments amounting to the alleged misconduct. The State further contends that Harris never invoked her Fifth Amendment right to remain silent. Conversely, Harris concedes that her invocation of the right to remain silent occurred pre-arrest and prior to being Mirandized, but argues that this right exists independently. We conclude that the district court abused its discretion in granting Harris a new trial based on her failure to demonstrate plain error and because there was no prosecutorial misconduct.[1] In particular, Harris did not invoke her Fifth Amendment right and, thus, comments regarding her failure to appear at the second police interview were not improper.

---

[1]We note that Harris first made a motion for mistrial based on a forensic pathologist's testimony. We further note that Harris made another motion for mistrial based on notes in the CPS records, but failed to show prejudice, and the district court denied her motion.

*Harris failed to object to the challenged prosecutorial misconduct*

"Generally, the failure to object to prosecutorial misconduct precludes appellate review." *Rose v. State*, 123 Nev. 194, 208, 163 P.3d 408, 418 (2007). However, we will review the prosecutorial misconduct for plain error if the error: "(1) had a prejudicial impact on the verdict when viewed in context of the trial as a whole, or (2) seriously affects the integrity or public reputation of the judicial proceedings." *Id.* at 208-09, 163 P.3d at 418 (internal quotation marks omitted).

When Foster testified at trial, the State inquired about the CPS hearing concerning Foster's and Harris' children. Without any objection, Foster stated that he attended the CPS hearing concerning the couple's children, but that Harris had not. Foster subsequently reiterated this answer, without any objection.

When Detective Boucher testified, the State asked him whether he tried to schedule a second interview with Harris. Without objection, he responded that Harris initially agreed to a second interview, but failed to appear. In addition, Detective Boucher testified that he had also scheduled a second interview with Foster, who did appear. Again, his direct testimony failed to elicit any objection.

On cross-examination, Detective Boucher reviewed Harris' phone records and acknowledged that she had received a text message from a law office, indicating the firm's location. The State then objected when Harris' counsel asked the detective, "Do you know if Ms. Harris spoke to an attorney and was advised not to say anything further to you?" Outside the presence of the jury, the district court overruled the objection and admonished the State for putting forth the fact that Harris failed to

show up to a second interview after she had contacted a criminal defense attorney who likely advised her not to speak with police.

Harris failed to object to the testimony of Foster and Detective Boucher improperly elicited by the prosecutor. Therefore, Harris must demonstrate that plain error exists. After reviewing the alleged instances of prosecutorial misconduct to which Harris failed to object, we conclude that plain error does not exist because there was no prosecutorial misconduct.

*The State did not engage in prosecutorial misconduct*

The district court found that due to Harris' possible retention of an attorney, prosecutorial misconduct occurred during the State's direct examination of Foster, Detective Boucher, and Ms. Hookstra, the CPS caseworker. In particular, the court found that Harris invoked her right to remain silent by proving that she consulted an attorney. Thus, the court found that commenting on Harris' failure to appear at her second police interview and subsequent CPS hearing amounted to prosecutorial misconduct.

The Fifth Amendment states in part that "[n]o person . . . shall be compelled in any criminal case to be a witness against [her]self." U.S. Const. amend. V; *see also* Nev. Const. art. 1, § 8. "We will not disturb a district court's determination of whether a defendant invoked [her] right to remain silent if that decision is supported by substantial evidence." *Maestas v. State*, 128 Nev. 124, 144-45, 275 P.3d 74, 87-88 (2012). However, "[a] person claiming the protection of the Fifth Amendment generally must affirmatively invoke it." *Dzul v. State*, 118 Nev. 681, 689, 56 P.3d 875, 880 (2002). Although personal invocation is preferred, an individual may also invoke her Fifth Amendment right through her

counsel, but there is a difference between an affirmative representation of a client's right by her counsel and speculation by the district court. *Palmer v. State*, 112 Nev. 763, 767, 920 P.2d 112, 114 (1996).

In an analogous case, we were "not convinced that the prosecutor's references to [the defendant's] failure to attend [police] meetings were comments on [the defendant's] silence." *Santillanes v. State*, 104 Nev. 699, 701, 765 P.2d 1147, 1148 (1988). Instead, such references are "specific examples of [the defendant's] *conduct*" and from this "the jury could reasonably infer [the defendant's] consciousness of guilt." *Id.* (emphasis added).

Here, *Santillanes* supports a conclusion that Harris' *conduct* of failing to appear for her second interview with police and subsequent CPS hearing, not her silence, was admissible to show consciousness of guilt. Although Detective Boucher testified that it is common for suspects to invoke their Fifth Amendment right to remain silent once they meet with an attorney, any contact Harris had with an attorney is not an unequivocal assertion. Similarly, CPS records revealing Harris' failure to attend her CPS hearing upon advice from counsel is also not an affirmative invocation of her Fifth Amendment right to remain silent, but rather supports an inference of invocation. However, even a reasonable inference whereby "one can circumstantially say that [Harris] lawyered up," as noted by the district court, falls short of the substantial evidence necessary to show that Harris affirmatively invoked her Fifth Amendment right. Therefore, commenting on Harris' failure to appear at her second

police interview and subsequent CPS hearing did not violate her Fifth Amendment right and, thus, did not amount to prosecutorial misconduct.[2]

With regard to the district court's subsequent denial of the State's flight instructions, we will not disturb the district court's decision in settling jury instructions absence an abuse of its broad discretion. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Id.* (internal quotation marks omitted). "We have cautioned that flight signifies something more than a mere going away. It embodies the idea of going away with a consciousness of guilt, for the purpose of avoiding arrest." *Weber v. State*, 121 Nev. 554, 581-82, 119 P.3d 107, 126 (2005) (internal quotation marks omitted). Due to the possibility of undue influence by a flight instruction, we will carefully scrutinize the record to determine if the evidence warranted such an instruction. *Id.* Further, flagrantly disobeying a court's order may constitute prosecutorial misconduct. *See Valdez*, 124 Nev. at 1194, 196 P.3d at 480.

Here, the State proposed a jury instruction on flight prior to opening statements, which the district court took under submission without opposition. The prosecutor mentioned during the State's opening

---

[2]We further conclude that Harris' Sixth and Fourteenth Amendment rights were not violated. *See Patterson v. State*, 129 Nev. 168, 175, 298 P.3d 433, 437 (2013) (stating that the Sixth Amendment right to counsel in all criminal prosecutions does not attach until the commencement of adversarial proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment") (internal quotation marks omitted); *see also Kaczmarek v. State*, 120 Nev. 314, 328, 326, 91 P.3d 16, 26, 24 (2004) (stating that the Fifth and Sixth Amendments apply to the states through the Fourteenth Amendment).

SUPREME COURT
OF
NEVADA

(O) 1947A

argument that Harris never showed up for her scheduled second interview with the detectives, and that she appeared to place a newspaper in front of her face as an effort to elude the police. The State argues that there was strong evidence of flight warranting a jury instruction. We disagree and conclude that there was no evidence of flight because Harris did not leave Nevada for the purpose of avoiding arrest. Rather, her departure to California constitutes a mere going away since she left in order to stay with family while her residence was taped off for several days. Thus, because of the district court's broad discretion and possibility of undue influence, we conclude that the court did not abuse its discretion in refusing the State's instruction on flight. However, the district court waited to rule on the State's proposed instruction on flight long after taking it under submission; therefore, we further conclude that the State did not engage in prosecutorial misconduct by insinuating flight after it was ordered not to do so.

Near the end of trial, the district court ruled that the State could not argue flight. Following the court's ruling, Ms. Hookstra, the CPS worker who took custody of Harris' and Foster's children when the victim died, testified. Harris objected when the State inquired into the conversation Ms. Hookstra had with Harris. Harris' counsel then brought to the district court's attention, during a bench conference, CPS records indicating that Harris told Ms. Hookstra: "I've hired an attorney and the attorney told me not to show up for a CPS hearing." The district court sustained Harris' objection as to Ms. Hookstra testifying that she had advised Harris of the CPS hearing and ordered the State not to discuss the CPS hearing. Following the court's ruling from the bench conference, the

CPS records were not presented to the jury and Ms. Hookstra did not comment on the CPS hearing.

The State abided by the district court's order not to argue flight. Ms. Hookstra's testimony never revealed that Harris failed to show up to the CPS hearing. Further, any reference insinuating flight was entirely absent from the State's closing arguments. Therefore, no prosecutorial misconduct occurred.[3] Accordingly, we

---

[3]We note that the district court determined that even if the individual grounds for prosecutorial misconduct were insufficient to grant a new trial, the cumulative effects of misconduct warrants a new trial. However, as we conclude that there was no prosecutorial misconduct, there can be no cumulative error.

ORDER the district court order granting respondent's presentence motion for a new trial REVERSED AND REMAND for sentencing.

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

cc:   Eighth Judicial District Court Dept. 15
      Attorney General/Carson City
      Clark County District Attorney
      Clark County Public Defender
      Eighth District Court Clerk

STATE VS. HARRIS (MARIANN)                                    No. 64913

STIGLICH, J., with whom CHERRY, C.J., GIBBONS, J., agree, dissenting:

On appeal, this court reviews a district court's grant or denial of a motion for a new trial for a "palpable abuse" of discretion. *Domingues v. State*, 112 Nev. 683, 695, 917 P.2d 1364, 1373 (1996) (internal quotation marks omitted). In reviewing the district court's determination, its "findings of fact are entitled to deference and will not be disturbed on appeal if they are supported by substantial evidence." *Browning v. State*, 124 Nev. 517, 531, 188 P.3d 60, 70 (2008).

Given the facts of this case, the decision to grant a new trial fell within the clear discretion of the district court. Notably, the majority concludes that the district court erred in finding that prosecutorial misconduct occurred. I disagree.

Viewed in a vacuum, each individual instance of alleged prosecutorial misconduct may not constitute improper commentary on Harris' exercise of her Fifth Amendment rights.[1] Nonetheless, this court

---

[1]Even if I were inclined to agree that the issues are limited to whether Harris' Fifth Amendment rights were violated, I do not believe that *Santillanes* stands for the proposition that the failure to appear at a police interview, on its own, is evidence of consciousness of guilt. Notably, in both *Santillanes* and *Maresca v. State*, upon which *Santillanes* relies, the defendants in question both failed to appear for police interviews, and then made nearly immediate attempts to either avoid arrest or flee the country. *Santillanes v. State*, 104 Nev. 699, 701, 765 P.2d 1147, 1148

*continued on next page . . .*

has repeatedly indicated that a prosecutor may not attempt to mislead the jury. *See Thomas v. State*, 120 Nev. 37, 48, 83 P.3d 818, 825 (2004) ("This court has held that prosecutors may not argue facts *or inferences* not supported by the evidence." (emphasis added) (internal quotation marks omitted)); *McGuire v. State*, 100 Nev. 153, 159, 677 P.2d 1060, 1064 (1984) (holding that a prosecutor's remarks constituted "improper attempts to mislead the jury").

Although the district court phrased the prosecutorial misconduct in terms of comments regarding Harris' silence, it is clear from the record that the district court was concerned with the prosecution's attempts at misleading the jury on the reasons for Harris' absence from the second interview and the child custody hearing. In its order granting a new trial, the district court stated:

> *Throughout the entire trial*, [the] State *disingenuously, and in clear contradiction to the Court's repeated directives* . . . continued, *over and over again*, to use a "compare and contrast method" in an effort to paint Armani Foster as cooperative and caring for his children, while portraying the Defendant as failing to cooperate with police and/or failing to show up for her own children's CPS hearing. *This portrayal was false*, as the evidence clearly showed that the Defendant had met with counsel, was acting on advice of

---

. . . *continued*

(1988); *Maresca*, 103 Nev. 669, 671-72, 748 P.2d 3, 5-6 (1987). As found by the district court, there is no evidence that Harris attempted to elude law enforcement. Without any additional evidence of evasion or flight, I do not believe that a failure to appear for a police interview, on its own, is evidence of consciousness of guilt.

counsel when she chose to remain silent, and when she did not appear at the CPS hearing for her own children.

(Emphases added.)

When viewed more broadly, as part of the State's compare and contrast method, the State improperly portrayed Harris to the jury in a manner that was not in accord with the evidence. Further, the district court, who observed the proceedings in their entirety, was in the best position to determine the prejudicial effect of this misconduct. *See Browning*, 124 Nev. at 531, 188 P.3d at 69-70 (noting that great deference is afforded to the district court's factual findings because it is able to observe the proceedings below); *see also Rowland v. State*, 118 Nev. 31, 38, 39 P.3d 114, 118-19 (2002) (stating that prosecutorial misconduct is likely prejudicial where the issue of guilt is close).

Given these facts, I would conclude that the district court did not abuse, much less "palpabl[y] abuse" its discretion in granting a new trial. Therefore, I dissent.

_____, J.
Stiglich

_____, C.J.
Cherry

_____, J.
Gibbons