JAMES RICK WICKER, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 24492

January 25, 1995                    888 P.2d 918

*Morgan D. Harris,* Public Defender and *Robert B. Amundson,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney and *Ronald C. Bloxham,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SHEARING, J.:

In 1977 appellant James Rick Wicker was found guilty, pursuant to a jury trial, of two counts of robbery, one count of rape and three counts of infamous crime against nature. On December 6, 1977, Judge Paul Goldman sentenced Wicker to a fifteen-year sentence for one of the robbery counts and to a consecutive life sentence with possibility of parole for the rape count ("the first two sentences").

Judge Goldman further sentenced Wicker to a fifteen-year term for the other robbery count and to three life sentences with

possibility of parole for the infamous crime against nature counts, with all sentences running consecutively to each other ("the last four sentences"). Judge Goldman then suspended these last four sentences and placed Wicker on probation for a period of five years, with such probation to commence following his parole from prison on the first two sentences.[1]

In 1991 Wicker was paroled from prison and on March 7, 1991, was placed on probation.[2] On May 19, 1992, the Department of Parole and Probation filed a Probation Violation Report with Judge Jack Lehman reflecting that Wicker had violated the terms of his probation by absconding probation supervision. On March 1, 1993, the state filed a motion for revocation of probation. Since Wicker was also on parole, he was in violation of his parole as well. Wicker's parole was revoked prior to his appearance before Judge Lehman. At the March 19, 1993 probation revocation hearing, Wicker questioned the legality of Judge Goldman's sentence and the probation revocation hearing was continued. On March 25, 1993, Wicker filed a motion to set aside Judge Goldman's sentences.

On April 16, 1993, another hearing was held at which Judge Lehman ruled Judge Goldman's sentencing scheme illegal. Judge Lehman then ordered that the judgment of conviction be amended to delete the probation portion of Wicker's sentences. Wicker appeals Judge Lehman's ruling, arguing that while Judge Lehman correctly ruled Judge Goldman's sentencing illegal, he erred in eliminating probation. For the reasons set forth below, we affirm Judge Lehman's order.

## I.   THE LEGALITY OF JUDGE GOLDMAN'S SENTENCES

In holding Judge Goldman's sentencing structure illegal, the district court relied on State v. District Court, 85 Nev. 485, 457 P.2d 217 (1969). In that case, the district court sentenced the

---

[1] Wicker subsequently appealed his convictions to this court but did not raise the issue of the legality of Judge Goldman's sentencing structure. This court affirmed the convictions. Wicker v. State, 95 Nev. 804, 603 P.2d 265 (1979).

[2] Wicker was originally released on parole April 18, 1988; however, for some unexplained reason, he was not placed on probation at that time. In 1990 Wicker's parole was revoked and he was returned to prison. Wicker's probation and parole records are not part of the record on appeal. However, the dates were set forth in Wicker's opening brief and the state verified these dates with the Department of Parole and Probation in Carson City. This court therefore takes judicial notice of the parole and probation dates pursuant to NRS 47.130.

defendant to ten years, suspended eight years of the sentence, and placed the defendant on three years probation following two years of incarceration. 85 Nev. at 486, 457 P.2d at 217. This court held that such a sentence constituted a judicial invasion into the legislative and executive fields, in contravention of the Nevada Constitution's separation of powers provision, article 3, section 1. 85 Nev. at 488, 457 P.2d at 218-19.

We decline to reach the separation of powers issue in this case because we have determined that Judge Goldman's sentencing structure violated both the letter and spirit of this state's statutory provisions regarding sentencing, probation and parole. *See* Hollis v. State, 96 Nev. 207, 210, 606 P.2d 534, 536 (1980) (this court will not consider constitutional issues unnecessary to determination of appeal); Spears v. Spears, 95 Nev. 416, 418, 596 P.2d 210, 212 (1979).

We note that nowhere in the statutory provisions regarding sentencing did the legislature authorize any sentence remotely similar to that imposed by Judge Goldman. In fact, NRS 176.215(1)[3] prohibits this type of sentence. Pursuant to NRS 176.215(1), the period of probation or suspension of a sentence may not exceed five years for the felonies committed in this case. In the instant case, while the period of probation for the last four sentences did not exceed five years, the period of suspension of these four sentences inevitably exceeded five years at the time it was imposed. This is so because the last four sentences, if they were to occur, could only occur following the granting of probation for the first two sentences. The life sentence then existing for "forcible rape" required a mandatory five-year period of incarceration before eligibility for parole,[4] and NRS 213.120 as it then

---

[3]NRS 176.215(1) provides in pertinent part:

The period of probation or suspension of sentence may be indeterminate or may be fixed by the court and may at any time be extended or terminated by the court, but the period, including any extensions thereof, must not be more than:

. . . .

(b) Five years for a felony, except that for a felony involving a violation of the provisions of NRS 484.3795 the period must not be more than 10 years.

At the time Wicker was sentenced, this section was the same in all important respects.

[4]NRS 200.363, the statute under which Wicker was convicted, provided in relevant part:

1. Forcible rape is the carnal knowledge of a female against her will. A person convicted of forcible rape shall be punished:

. . . .

(b) If no substantial bodily harm results:
    (1) By imprisonment for life; or

existed required that Wicker serve at least one-fourth of the fifteen-year sentence for robbery less "good time credits." Therefore, at the time Wicker was sentenced, the last four sentences were inevitably suspended for more than five years, contrary to NRS 176.215(1).

Moreover, the purpose behind the limitation period in NRS 176.215(1) is to set some sort of time limit on a district court's power over a particular defendant. Under a sentencing scheme such as that imposed by Judge Goldman, the district court could exercise control over a defendant indefinitely, depending upon the number and length of sentences the defendant serves before he is granted probation. Thus, we hold that Judge Goldman's sentencing scheme was in violation of NRS 176.215(1).[5]

## II. JUDGE LEHMAN'S CORRECTION OF THE ILLEGAL SENTENCE

NRS 176.555 provides that a district court may correct an illegal sentence at any time. Wicker claims that Judge Lehman erred in correcting Judge Goldman's sentence by deleting the probation portion and ordering that Wicker serve the last four sentences. He contends that Judge Lehman's order was tantamount to the revocation of Wicker's probation without a probation revocation hearing and that it was inconsistent with Judge Goldman's intent that Wicker become eligible for parole after approximately eight years in prison. We disagree.

First, Judge Lehman's order did not revoke Wicker's probation; it eliminated it, pursuant to NRS 176.555. Second, the

---

(2) By imprisonment for a definite term of not less than 5 years.
Under either sentence eligibility for parole begins when a minimum of 5 years has been served.

In 1977, the legislature repealed NRS 200.363. See 1977 Nev. Stat. ch. 598, § 29 at 1635.

[5]The fact that through some error, Wicker was not placed on probation following his initial 1988 release on parole further demonstrates the defects and unwieldiness of Judge Goldman's sentencing structure. For example, it is unclear how, practically speaking, such a sentencing scheme would be implemented. Must the Department of Parole and Probation, upon the granting of parole, be aware of the period of probation and the suspended sentences and place the defendant on probation itself, a duty usually reserved for the judiciary? Or must the district court monitor the defendant's status and discover when the defendant is placed on parole so that it may impose the period of probation? Or must the Department of Parole and Probation inform the district court of the defendant's parole status so that the district court may begin the period of probation? Perhaps it was the lack of an answer to these questions which accounted for the failure to commence Wicker's probation upon his initial release on parole.

intent behind Judge Goldman's sentencing scheme was not simply to allow Wicker to be released on parole after serving time on the first two sentences. Judge Goldman clearly wished the court to retain jurisdiction over Wicker so that if Wicker violated probation, the court could execute the four suspended sentences. At this point, we decline to speculate regarding what sentences Judge Goldman would have given had he known that the sentencing scheme he employed was illegal. We merely decide whether Judge Lehman properly cured the illegal infirmity of Judge Goldman's sentencing structure.

Judge Goldman acted within his statutory sentencing authority in imposing the two consecutive fifteen-year terms for robbery and the four consecutive sentences of life with possibility of parole for the count of rape and the three counts of infamous crime against nature. The only unauthorized portion of his sentence was the period of probation and the suspension of the last four sentences. In deleting the probationary period and ordering that the last four sentences be served rather than suspended, Judge Lehman eradicated the illegality of Judge Goldman's sentence.

Based on the foregoing, we uphold Judge Lehman's order declaring Judge Goldman's sentencing scheme illegal and correcting the sentence.

STEFFEN, C. J., and YOUNG, J., concur.

ROSE, J., with whom SPRINGER, J., joins, concurring in part and dissenting in part:

I concur in the decision that the sentences given Wicker were illegal but object to how they were modified by the district court.

Wicker was given two sentences to serve for robbery and rape that ran consecutively to one another, and then was given the benefit of probation for the remaining four sentences, with probation to begin after the first two sentences were served. Obviously, suspending those four sentences to probation when probation would not begin for more than five years was illegal, but it was clear that the sentencing judge was giving some benefit to Wicker by not simply running them all consecutively to the first two sentences without probation.

Had the sentencing judge known that his probationary scheme for the four sentences was illegal, no one knows what he might have done. Since he was giving some sort of benefit to Wicker, he may well have run those four sentences concurrently to the first two, or consecutively to the first two and concurrent to one another.

To correct the sentencing error, the district court removed the

portion of the sentences that was beneficial to Wicker, but let the remainder of the sentences stand. While the sentences as modified are now legal, the sentencing package as it presently stands is far more punitive to Wicker than when pronounced.

Since we do not know how the sentencing judge would have modified his illegal sentences, we should remand this matter back to the district court for a completely new sentencing before a new district court judge. In approving the modified sentences, Wicker's sentences are far more punitive than when first handed down and more harsh than the sentencing judge intended.