131 Nev., Advance Opinion 62

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

DOMINIC SANTINO CASSINELLI,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64881



FILED

AUG 27 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, entered pursuant to an *Alford* plea,[1] of coercion and preventing or dissuading a person from testifying. Sixth Judicial District Court, Pershing County; Richard Wagner, Judge.

*Affirmed in part, vacated in part, and remanded.*

Law Offices of John E. Oakes and John E. Oakes, Reno; Richard F. Cornell, Reno,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; R. Bryce Shields, District Attorney, Pershing County,
for Respondent.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

---

[1]*North Carolina v. Alford*, 400 U.S. 25 (1970).

2/8/16: Corrected per letter to publishers. CT

15-90097b

# OPINION

By the Court, SILVER, J.:

Appellant Dominic Cassinelli pleaded guilty to coercion and preventing or dissuading a person from testifying. The guilty plea resulted from allegations made by Cassinelli's long-time girlfriend that he had sexually abused her. Cassinelli requested the district court to defer sentencing and assign him to a treatment program for alcohol abuse under NRS Chapter 458 rather than impose a term of incarceration.

The primary legal issue before this court is whether NRS 458.300(1)(d) precludes eligibility for a drug or alcohol treatment program for the crime of coercion, where the acts underlying the crime fall within the definition of domestic violence, but the defendant had not pleaded guilty to a charged felony "which constitutes domestic violence as set forth in NRS 33.018." We hold that when determining eligibility to elect a program of treatment, the district court may only consider the actual crime the defendant pleaded guilty to or was found guilty of by a jury.

We further determine whether, in this case, the district court erred by finding Cassinelli ineligible for a treatment program, whether the district court abused its discretion by denying Cassinelli's motion to elect a program of treatment under Chapter 458 on alternate grounds, whether there was prosecutorial misconduct, whether error arises from Cassinelli's inability to cross-examine the victim during her victim-impact statement, and whether the sentence imposed is illegal.

We conclude the district court erred by determining that the acts underlying the crime involved domestic violence and, thereafter, concluding that Cassinelli was ineligible for a treatment program under Chapter 458. We nevertheless affirm the district court's decision not to

assign Cassinelli to a treatment program, as ultimately sentencing is left to the sound discretion of the district court. We also affirm the district court on the remaining issues, with the exception of the sentence imposed on Count II (preventing or dissuading a person from testifying), which we hold is illegal. We vacate Cassinelli's sentence on Count II and remand this case only for the district court to resentence him on the gross misdemeanor.

## FACTUAL AND PROCEDURAL HISTORY

Appellant Dominic Cassinelli and the victim were involved in a romantic relationship from 2006 to 2012. They had two children together. During that time, Cassinelli was employed as a police officer in Winnemucca.

At the preliminary hearing, testimony established that the pair engaged in sadomasochistic sex acts. The victim testified that she consented in the beginning of the relationship, but over time, the violence escalated to the point where she no longer wished to participate in sadomasochistic sex acts. Eventually the victim took the couple's children and moved away. After the victim discovered that Cassinelli began seeing another woman, the victim reported to the Winnemucca Chief of Police that Cassinelli had sexually assaulted her. Although the victim had accused him of domestic violence in the past, Cassinelli had no convictions on his record.

The case was referred to the Nevada Division of Investigation. The victim reported specific incidents of sexual assault, involving handcuffing, binding, blindfolding with duct tape, and suspension from the ceiling with harnesses and straps. The victim also reported that Cassinelli threatened to kill her and pointed a loaded assault rifle and handgun at her while their children were present. Further, the victim

advised investigators that the children witnessed Cassinelli sexually assaulting her. The victim provided investigators with photographs and an event journal to substantiate her claims.

Prosecutors charged Cassinelli with four counts of sexual assault; five counts of battery with intent to commit sexual assault or, in the alternative, domestic battery with strangulation; two counts of abuse, neglect, or endangerment of a child; two counts of misdemeanor domestic battery; and two counts of unlawful capture/distribution/display of image of private area of another.

The parties reached a plea agreement, wherein Cassinelli entered an *Alford* plea to coercion, a felony (Count I), and preventing or dissuading a person from testifying, a gross misdemeanor (Count II). The parties agreed Count I would not be treated as "sexually motivated." Further, Count I contained no language in the information reflecting that the coercion constituted domestic violence. The State agreed it would not oppose treatment if Cassinelli was eligible for a program of treatment under Chapter 458. The parties were free to argue during sentencing regarding punishment with regard to Count II.

At sentencing, Cassinelli requested and the State recommended to the district court, a program involving treatment under NRS 458.300 for Count I because it believed Cassinelli was eligible based upon his evaluation recommending alcohol treatment. The State then argued for the maximum sentence of 364 days in jail for Count II. Cassinelli had already spent 279 days in custody. As the final component of the combined hearing on the motion to elect treatment and sentencing, the victim addressed the court with her impact statement.

The district court acknowledged that Cassinelli was eligible for alcohol treatment under NRS 458.300 but stated "whether that's to be given is another issue. That's up to me as the judge." The district court, however, did not subsequently specifically address Cassinelli's request for a program of treatment under Chapter 458. Instead, the court sentenced Cassinelli to a prison term of 14-48 months for Count I, and a consecutive jail term of 364 days for Count II. The court suspended the sentence on Count II and imposed a three-year term of probation, to run consecutive to Count I.

Cassinelli appealed, claiming that his sentence was illegally imposed because the district court failed to adjudicate his motion for treatment pursuant to NRS 458.290 *et seq.*, prior to imposing sentence. The parties filed a "Stipulation for Order of Remand," in which the parties agreed that the record did not reveal that the district court had expressly adjudicated the motion for election of treatment prior to sentencing Cassinelli. Because the record revealed the district court had determined that Cassinelli was eligible for treatment and implicitly denied the motion, but the record was silent on the basis for the denial, the Nevada Supreme Court approved the parties' stipulation and remanded the appeal to the district court for the limited purpose of entering an order explaining its ruling. *Cassinelli v. State*, Docket No. 64881 (Order of Limited Remand, June 11, 2014).

On remand, the district court entered a written "Order Adjudicating Motion for Election of Treatment." The district court reconsidered its original position that Cassinelli was eligible for assignment to a program for alcohol treatment under NRS 458.300. The district court ruled that the acts underlying Cassinelli's guilty plea

5

constituted domestic violence as defined in NRS 33.018. Therefore, despite the fact Cassinelli pleaded guilty to coercion pursuant to NRS 207.190, the court found that Cassinelli was not eligible to elect a program of treatment pursuant to NRS 458.300(1)(d). The court further ruled that even if Cassinelli were eligible for treatment, Cassinelli was not likely to be rehabilitated through alcohol treatment and was not otherwise a good candidate for treatment, therefore his motion was denied. We now consider Cassinelli's direct appeal from his judgment of conviction and sentence.

## ANALYSIS

On appeal, Cassinelli argues that (1) the district court incorrectly determined that he was not eligible for assignment to a program of treatment for alcohol abuse under NRS Chapter 458; (2) assuming he was eligible to elect a program of treatment under Chapter 458, the district court abused its discretion by denying his motion to elect treatment; (3) the prosecutor engaged in misconduct during sentencing; (4) the district court erred by not allowing cross-examination of the victim after her impact statement to the court; and (5) the sentence the district court imposed was illegal. For the following reasons, we affirm in part.

*The district court erred by ruling that Cassinelli was not eligible for alcohol treatment under NRS Chapter 458*

NRS 458.300(1)(d) provides that a person who is convicted of a crime that is "[a]n act which constitutes domestic violence as set forth in NRS 33.018" is not eligible for assignment to a program of treatment for the abuse of alcohol or drugs. Cassinelli argues that nothing in NRS 458.300(1) makes a person ineligible for treatment if convicted of the crime of coercion pursuant to NRS 207.190. The State counters that Cassinelli was ineligible under NRS 458.300(1)(d) because the underlying

facts in this case constitute acts of domestic violence as defined by NRS 33.018(1)(c).

We review questions of statutory interpretation de novo. *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011). In interpreting a statute, we give the statute its plain meaning and consider the statute as a whole, awarding meaning to each word, phrase, and provision. *Haney v. State*, 124 Nev. 408, 411-12, 185 P.3d 350, 353 (2008). We strive to avoid rendering any words or phrases superfluous or nugatory. *Id.* Nevada's criminal statutes should be interpreted to provide both fairness and simplicity. NRS 169.035 (also referring to "the elimination of unjustifiable expense and delay").

Only if the statute is ambiguous do we look beyond the statute's language to legislative history or other sources to determine the intent of the statute. *Attaguile v. State*, 122 Nev. 504, 507, 134 P.3d 715, 717 (2006). Ambiguity arises where the statute's "language lends itself to two or more reasonable interpretations." *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). When a criminal statute is ambiguous, we construe the statute in favor of the accused. *Haney*, 124 Nev. at 412, 185 P.3d at 353.

The portion of NRS 458.300 at issue here provides:

[A]n alcoholic . . . who has been convicted of a crime is eligible to elect to be assigned by the court to a program of treatment for the abuse of alcohol or drugs . . . unless:

1. The crime is:

. . .

(d) An act which constitutes domestic violence as set forth in NRS 33.018.

The statute plainly removes from eligibility a person who is convicted of a crime constituting domestic violence. Less clear is what the sentencing judge may consider when determining whether the crime is "an act which constitutes domestic violence."

Cassinelli argues that a district court should only consider the crime for which the defendant is convicted of in determining eligibility. The State argues that when determining eligibility, the court may look at the underlying facts in each case.[2]

Both interpretations are reasonable. The language stating "[t]he *crime* is . . . [a]n act which constitutes domestic violence" may be construed as requiring that the actual crime the defendant is convicted of be delineated in the charging document as "constituting domestic violence" before a court may preclude eligibility under the statute. NRS 458.300(1)(d) (emphasis added). Yet, because subsection (d) uses the broader term "act," while the remaining subsections provide that the disqualifying crime must itself be a "crime" or "offense," an inference is raised that, in situations where the facts of the crime may fall within the definition of domestic violence, the sentencing judge may look at the acts underlying the crime in determining eligibility. Because the language of the statute supports two reasonable interpretations, we turn to the legislative history in determining the legislative intent. *See Catanio*, 120 Nev. at 1033, 102 P.3d at 590 ("Legislative intent is the controlling factor in statutory construction.").

_____

[2]We note the State conceded below and at oral argument that, prior to the district court's ruling on remand, the State believed Cassinelli was eligible for a treatment program.

NRS 458.300 was amended in 1975, *see* 1975 Nev. Stat., ch. 553, § 1, at 971, although the language now found in subsection (1)(d) was not added until 1995 through Assembly Bill 84. *See* 1995 Nev. Stat., ch. 157, § 1(1), at 235; Hearing on A.B. 84 Before the Assembly Judiciary Comm., 68th Leg. (Nev., April 19, 1995); Hearing on A.B. 84 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 15, 1995). A.B. 84 proposed several amendments to the statute, and the legislative history makes clear this bill was meant to expand, as opposed to limit, eligibility for drug and alcohol treatment programs. Hearings on A.B. 84 Before the Assembly Judiciary Comm., 68th Leg. (Nev., February 6 and 24, 1995). At several points, legislators referred to A.B. 84 as encompassing persons who had been charged with or convicted of domestic violence.[3] Hearings on A.B. 84 Before the Assembly Judiciary Comm., 68th Leg. (Nev., February 24 and April 19, 1995); Hearings on A.B. 84 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 15, 1995). However, it appears the Legislature wished to exclude defendants who pleaded guilty or were found guilty of "battery constituting domestic violence" because these defendants had access to other programs tailored to stop recidivism. Hearing on A.B. 84 Before the Assembly Judiciary Comm., 68th Leg. (Nev., April 19, 1995); Hearings on A.B. 84 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 15, 1995).

---

[3]For example, it was specifically noted that the amendment would exclude "misdemeanor domestic violence convictions[.]" Hearing on A.B. 84 Before the Senate Judiciary Comm., 68th Leg. (Nev., February 24, 1995).

COURT OF APPEALS
OF
NEVADA

(O) 1947B

Nothing in the legislative history indicates the Legislature intended for the sentencing judge to consider whether the underlying acts of a crime constitute domestic violence for the purpose of determining eligibility. In fact, it appears quite the opposite is true and the Legislature intended the eligibility determination to be based solely on the crime with which the defendant was charged with or found guilty of. The primary focus of A.B. 84 was increasing eligibility for drug and alcohol treatment programs. The Legislature recognized that plea bargaining within the criminal justice system is very common and some defendants would be able to plead down their charges and be eligible for a program of treatment. Hearings on A.B. 84 Before the Assembly Judiciary Comm., 68th Leg. (Nev., February 6 and 24, 1995).

Prosecutors are granted the authority to consider each case individually and charge or negotiate pleas in most criminal cases. Further, prosecutors consider both the underlying facts of a crime and punishment sought in negotiating a charge when prosecuting a case within the system. The Legislature could have precluded plea bargains that would make an otherwise ineligible defendant eligible for a program of treatment under Chapter 458, however it did not do so.

Here, the prosecutor plea bargained charges in this case to coercion without specifically delineating the coercion as constituting domestic violence. In the guilty plea agreement, the prosecutor affirmatively agreed not to oppose a program for alcohol treatment if an evaluation confirmed that Cassinelli was a good candidate for alcohol treatment pursuant to Chapter 458. At sentencing, based on the evaluation, the prosecutor affirmatively recommended an alcohol treatment program with probation on the coercion charge. Even the

district court believed that Cassinelli was eligible for treatment under this statute. Thus, the prosecutor, the district court, and Cassinelli all believed he was eligible for alcohol treatment despite the fact that the underlying acts involved domestic violence in this case. Moreover, Cassinelli pleaded guilty to felony coercion. The information and the guilty plea agreement did not specifically delineate Cassinelli's coercion as constituting domestic violence, which would have placed all parties on notice that Cassinelli was ineligible for alcohol treatment under Chapter 458.

We hold that in considering eligibility under NRS 458.300(1)(d), the sentencing judge is limited to considering only the delineated crime that the defendant pleaded guilty to or was found guilty of, rather than considering whether the underlying acts involved in the crime constitute domestic violence. Fairness and due process ensure that defendants know at the time they plead guilty whether they may be eligible for a treatment program pursuant to Chapter 458. The prosecutor has discretion to resolve a criminal charge, including whether to add language to an information or indictment alleging that the crime itself constitutes domestic violence. This effectively gives all criminal defendants notice at the time of pleading guilty whether they may be eligible for drug and alcohol treatment under NRS 458.300 and removes any ambiguity otherwise arising from requiring the district court to determine whether the underlying facts constitute or do not constitute domestic violence.

Cassinelli pleaded guilty to felony coercion. Cassinelli did not plead guilty to coercion constituting domestic violence. The State did not

allege in the information that this coercion constituted domestic violence.[4] During negotiations, and at sentencing, it is clear that Cassinelli, the State, and the district court, all believed Cassinelli's crime did not preclude him from eligibility for alcohol treatment under Chapter 458. Accordingly, the district court's conclusion upon remand that NRS 458.300(1)(d) excluded Cassinelli from eligibility for alcohol treatment was error.

This conclusion does not end our inquiry, however, because in this case the district court alternatively denied Cassinelli's request to be placed in a treatment program pursuant to Chapter 458 because the court found that he was not likely to be rehabilitated through treatment or was not otherwise a good candidate for treatment. We note that either basis, standing alone, is sufficient to deny treatment. We therefore consider whether the district court abused its discretion by denying Cassinelli's request below. For the following reasons, we conclude that the district court did not abuse its discretion by denying Cassinelli's requests on these bases.

*The district court did not abuse its discretion by denying Cassinelli's request for assignment to a program of treatment*

Cassinelli claims that the district court abused its discretion by denying his request for assignment to a program of treatment on the

---

[4]We note that the prosecutor purposefully negotiated Cassinelli's charges to coercion without sexual motivation. The prosecutor negotiated this despite the fact that Cassinelli was originally charged with the crime of sexual assault. By not alleging that Cassinelli's crime involved a sexually motivated coercion, this prosecutor used his discretion to effectively change the penalty involved at sentencing, and Cassinelli, too, was cognizant of the difference in the penalty at the time he pleaded guilty.

basis that he was not likely to be rehabilitated through treatment or was not otherwise a good candidate for treatment. Cassinelli further asserts that the district court improperly distinguished between benefiting from a treatment program and being likely to be rehabilitated through a treatment program. Cassinelli also argues that the court denied him entry into a treatment program because he entered an *Alford* plea and never admitted guilt. Therefore, the court's decision to sentence him to prison was based on prejudice and preference. We disagree.

NRS 458.320(2) provides: "If the court, acting on the report or other relevant information, determines that the person is not an alcoholic or drug addict, is not likely to be rehabilitated through treatment or is otherwise not a good candidate for treatment, the person may be sentenced and the sentence executed."[5] Although the district court determined that Cassinelli was an alcoholic, it failed to clearly make separate findings regarding whether Cassinelli was likely to be rehabilitated or was not otherwise a good candidate. Nevertheless, we consider in turn the three aspects of the statute in light of the district court's findings.

*The district court reluctantly determined that Cassinelli was an alcoholic*

In making its determination under the statute, the district court may consider evaluations regarding whether the individual is an alcoholic or drug addict and is likely to be rehabilitated through

---

[5]The legislative history of NRS 458.320 indicates a district court has discretion when determining whether to grant or deny a motion for notice of election under this statute. *See* Minutes, Hearing on A.B. 413 Before the Assembly Judiciary Comm., 64th Leg. (Nev., April 1, 1987).

treatment, as well as any other relevant information. NRS 458.310(1); NRS 458.320(2); *see also Silks v. State*, 92 Nev. 91, 93-94, 545 P.2d 1159, 1161 (1976) (noting the trial court, at sentencing, "is privileged to consider facts and circumstances which clearly would not be admissible at trial").

Here, the district court conducted a hearing regarding eligibility for treatment under NRS 458.300 simultaneously with Cassinelli's sentencing. In determining whether Cassinelli was an alcoholic, the district court considered a facility evaluation recommending placement into an alcohol treatment program.

The district court found, albeit reluctantly, that Cassinelli was an alcoholic, based upon the testimony at the hearing and the evaluations. The district court voiced concerns with this designation, citing "some reservations" arising from the fact that the evaluator was picked by defense counsel, and the evaluation contained language indicating to defense counsel that the evaluation could be revised in the manner defense counsel requested. Despite these concerns, the district court found Cassinelli to be an alcoholic. Based on the factual findings in the record, the district court did not abuse its discretion by determining Cassinelli was an alcoholic.

*The district court found that Cassinelli would not likely be rehabilitated through an alcohol treatment program*

The district court conducted a hearing regarding eligibility for treatment under NRS 458.300 simultaneously with Cassinelli's sentencing.[6] During that hearing, the district court first correctly

_____

[6]We take this opportunity to caution district courts against failing to make specific findings, separate and apart from the sentencing record, regarding a determination of whether to assign a defendant to a treatment program pursuant to Chapter 458. Making separate and specific findings

*continued on next page...*



distinguished between benefiting and being likely to be rehabilitated. *See* NRS 458.320(1) ("If the court . . . determines that the person . . . is not likely to be *rehabilitated* through treatment . . . the person may be sentenced and the sentence executed." (emphasis added)). The district court concluded, although Cassinelli may benefit from a program of treatment, that he would not likely be rehabilitated through such treatment. Most importantly, the district court noted:

> Defendant demonstrated little ability to be rehabilitated. Throughout the sentencing, it appeared that the Defendant believed he should have special consideration because he is a "3rd generation Nevadan" and that his father had a good reputation as a long-time Reno police officer. *At no time did the Defendant demonstrate any humility necessary for treatment.*

(Emphasis added.) Thus, the district court specifically made findings that in this case Cassinelli would not likely be rehabilitated from alcohol abuse if the court assigned Cassinelli to an alcohol treatment program.

The facts and evidence support these findings. Successful rehabilitation hinges largely on the defendant's state of mind, particularly the defendant's humility and willingness to take accountability for alcoholism. However, the presentence investigation report prepared by the Division of Parole and Probation noted that Cassinelli "does not believe alcoholic beverages are problematic for him." This was contrary to

---

*...continued*

on the record alleviates potential issues and confusion that may otherwise arise upon appellate review. This is especially true where, as here, the hearing for assignment to a treatment program was heard along with Cassinelli's sentencing hearing.

what Cassinelli otherwise explained to evaluators for the program. Further, Cassinelli's lack of humility during the hearing and sentencing strongly indicated that he was not willing to take accountability for his alcoholism, driving the conclusion that an alcohol treatment program would be ineffectual. And, as discussed below, Cassinelli's criminal acts went far beyond the issue of alcohol abuse. We conclude that the district court did not abuse its discretion by determining that Cassinelli was not likely to be rehabilitated from the abuse of alcohol and refusing to assign him to an alcohol treatment program on this basis.

*The district court determined that Cassinelli was not otherwise a good candidate for alcohol treatment in this case*

In addition to finding that Cassinelli was not likely to be rehabilitated by treatment, the district court determined that Cassinelli was not otherwise a good candidate for a program of treatment. Importantly, during the hearing, the district court found Cassinelli's testimony unbelievable and the victim's testimony credible. The court's order concluded that Cassinelli's criminal acts with firearms involving sexual, verbal, physical, and child abuse were "of the worst kind" and, rather than stemming from alcoholism, were grounded in "a man establishing improper control over a woman by the sexual and mental abuse that was prevalent in this case." Rather than granting Cassinelli's request to elect a program of treatment, which would result in the dismissal of the coercion charge and ultimately seal his record, the district court, instead, opted to hold Cassinelli accountable for his crime by sentencing Cassinelli to prison.

This was not an abuse of discretion.[7] The record supports the district court's conclusion that Cassinelli was not otherwise a good candidate for a dismissal with assignment to an alcohol treatment program. The victim's impact statement reflected multiple instances of Cassinelli's severe physical, sexual, and verbal abuse. Graphic photographs and an event journal corroborated the victim's testimony. Cassinelli appeared to be unaffected by the harm his violent acts caused the couple's children, who were also present during some of his crimes. And, because the facility report only concluded that Cassinelli was likely to benefit from such a program, the district court may have concluded that Cassinelli was not even eligible because NRS 458.320(1) requires that the facility determine that the person is likely to be rehabilitated.

We further note that NRS 458.300 does not bar Cassinelli from a treatment program based on what he pleaded guilty to and because the district court found that he was an alcoholic. The statute and the legislative history make clear that the Nevada Legislature recognized that

_____

[7]We note that if refusing to permit a person to participate in a treatment program and sending that person to prison instead constitutes a more severe sentence, then, because Cassinelli pleaded guilty pursuant to *Alford* and maintained his innocence, the district court would have abused its discretion by considering Cassinelli's lack of remorse in making its determination that Cassinelli was not otherwise a good candidate for assignment to an alcohol treatment program. *See Brown v. State*, 113 Nev. 275, 291, 934 P.2d 234, 245 (1997) ("The district court violated [the defendant's] Fifth Amendment rights by considering his 'lack of remorse' when he still had a constitutional right to maintain his innocence and by threatening to impose a harsher sentence if [the defendant] refused to admit his guilt."). Because we find that the district court's reliance on other factors supports the district court's determination that Cassinelli was not likely to be rehabilitated or was not otherwise a good candidate for a program of treatment, we need not address this issue.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

defendants who engage in domestic violence are not necessarily good candidates for alcohol treatment programs because other programs are available for these offenders. *See* NRS 458.300(1)(d); Hearing on A.B. 84 Before the Assembly Judiciary Comm., 68th Leg. (Nev., April 19, 1995); Hearing on A.B. 84 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 15, 1995). Thus, although Cassinelli was not charged with or convicted of a crime constituting domestic violence and was technically eligible for an alcohol treatment program, the actions underlying his crime involved acts of domestic violence, and thus, the district court did not abuse its discretion in determining that these facts weighed against assignment to a treatment program designed to rehabilitate alcoholism as Cassinelli was not otherwise a good candidate.

In sum, we conclude that the district court properly distinguished between benefiting from an alcohol treatment program and being likely to be rehabilitated through an alcohol treatment program. Further, the district court's findings that Cassinelli was not likely to be rehabilitated because he lacked humility and did not take accountability for his alcoholism, and that he was not an otherwise good candidate for an alcohol treatment program because of his propensity for violence and disregard for his children's well-being, are supported by the record. Accordingly, we conclude that the district court did not abuse its discretion in declining to assign Cassinelli to an alcohol treatment program.

*The plea agreement was not breached and the prosecutor did not engage in misconduct at sentencing*

We next turn to whether the prosecutor breached the plea agreement at sentencing and whether the prosecutor's actions amounted to misconduct. Cassinelli claims that the prosecutor committed misconduct during sentencing by advocating for a jail sentence for his

conviction on Count II, thereby indirectly recommending a sentence harsher than that agreed upon in the plea agreement. Cassinelli did not object to the prosecutor's argument. We disagree with Cassinelli's claim.

We review unpreserved claims of prosecutorial misconduct for plain error. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). Reversal is required if the State has violated either the terms or the spirit of the plea agreement in exercising its right to argue at sentencing. *Van Buskirk v. State*, 102 Nev. 241, 243, 720 P.2d 1215, 1216 (1986).

The plea agreement in this case provided that the State would not oppose an alcohol treatment program if Cassinelli was eligible for admission into an alcohol treatment program for Count I. The plea agreement allowed the parties to argue their position at sentencing regarding Count II. At sentencing, the prosecutor recommended a program of treatment for Count I and argued for the maximum sentence on Count II, asking the court for 364 days' jail time. The guilty plea agreement expressly allowed for this argument.

Nor did the prosecutor breach the plea agreement with regard to Count I. Although the prosecutor initially made statements regarding the gruesomeness of the crimes involved, the judge interrupted the prosecutor, who proceeded to clarify that his arguments applied to Count II, preventing or dissuading a person from testifying. The prosecutor thereafter limited his argument to the facts relating to that crime. Cassinelli did not object to the prosecutor's argument, and we conclude that he has failed to demonstrate any error, let alone plain error, because the prosecutor's argument did "not explicitly or implicitly undercut the

sentencing recommendation." *Sullivan v. State*, 115 Nev. 383, 389, 990 P.2d 1258, 1262 (1999); *see also Valdez*, 124 Nev. at 1190, 196 P.3d at 477.

Accordingly, we conclude that the State did not breach the spirit of the plea agreement and did not commit misconduct in the manner alleged.

*The district court did not err by refusing Cassinelli an opportunity to cross-examine the victim during her impact statement at sentencing*

Cassinelli next claims that the district court erred by preventing him an opportunity to cross-examine the victim after her impact statement at sentencing. Specifically, Cassinelli claims error stemming from the district court's actions in explaining the procedure involved in the sentencing. We disagree with Cassinelli's interpretation of the district court's comments, as the record demonstrates that Cassinelli was never expressly prohibited from cross-examining the victim.

We review unobjected-to conduct for plain error. *Valdez*, 124 Nev. at 1190, 196 P.3d at 477. NRS 176.015(3)(b) allows a victim to present, at sentencing, a statement that "[r]easonably expresses any views concerning the crime, the person responsible, the impact of the crime on the victim and the need for restitution." Where a victim impact statement refers only to "the facts of the crime, the impact on the victim, and the need for restitution," a victim testifying as a witness must be sworn in, "but . . . cross-examination and prior notice of the contents of the impact statement normally are not required." *Buschauer v. State*, 106 Nev. 890, 893-94, 804 P.2d 1046, 1048 (1990). Generally, a defendant will already be aware of the information in the statement and will be able to rebut that information. *Id.* at 894, 804 P.2d at 1048. However, when an impact statement includes references to specific prior acts of the defendant that fall outside the scope of NRS 176.015(3), "due process requires that the

accuser be under oath, [and have] an opportunity for cross-examination and . . . reasonable notice of the prior acts which the impact statement will contain" must be provided. *Id.*

Here, the victim prepared an impact statement that was attached to the presentence investigation report. This statement was provided to Cassinelli prior to sentencing. At sentencing, after being sworn in, the victim read aloud to the court the same impact statement that was attached to the presentence investigation report. The impact statement was provided to both the court and Cassinelli well in advance of sentencing, and the statement related the facts of the crimes, addressed the impact of those crimes on the victim and her children, and concluded that five years of probation was not enough time to account for Cassinelli's actions.

Cassinelli did not assert below, nor does he assert on appeal, that cross-examination of the victim was required because the impact statement included allegations of prior acts that were not related to the instant crimes. And, despite receiving an exact copy of the victim impact statement in advance of sentencing, Cassinelli never objected to the statement's contents. Cassinelli also never requested to cross-examine the victim and did not object to her testimony at sentencing.

We conclude, under the circumstances presented, that cross-examination of the victim regarding her impact statement was not required. The statement was limited in accordance with NRS 176.015(3), Cassinelli failed to object to the information in the statement, and Cassinelli never argued that the victim's statements went beyond the crimes involved in this case. We also note that Cassinelli has not shown

any prejudice arising from an inability to cross-examine the victim.[8] Therefore, the district court did not err.[9]

*The sentence was illegal*

Finally, we turn to the question of whether Cassinelli's sentence was illegal. Here, the district court sentenced Cassinelli to serve a prison term of 14-48 months on Count I. On Count II, the gross misdemeanor, the district court sentenced Cassinelli to 364 days of jail, and then the court suspended that sentence and placed Cassinelli on probation for three years. Because the district court ordered the sentence for Count II to run consecutive to Count I, Cassinelli's suspended jail

---

[8]Cassinelli implies, had he been able to cross-examine the victim, he could have undermined the credibility of her statements. However, we note that during sentencing, Cassinelli argued to the district court that the victim only asserted allegations of abuse after she had discovered Cassinelli was involved with another woman, and Cassinelli presented witness testimony that the victim had threatened to "bury [Cassinelli] and take everything he's ever had in his life." Cassinelli was, therefore, able to attack the victim's credibility. Cassinelli has not shown why, under these facts, cross-examination would have yielded a different sentence.

[9]To the extent Cassinelli claims that the district court abused its discretion by denying his motion to continue the sentencing hearing, we reject this claim. Initially, we note that Cassinelli made no formal motion to continue the sentencing. Moreover, to the extent he informally asked for a continuance, the request did not arise in the context of obtaining the transcripts to cross-examine the victim. Further, Cassinelli was given reasonable notice of the contents of the impact statement, and he failed to demonstrate that he did not have an opportunity to obtain the transcripts prior to the sentencing hearing. *See Higgs v. State*, 126 Nev. 1, 9, 222 P.3d 648, 653 (2010) (stating that a court's decision on a motion for a continuance is reviewed for an abuse of discretion); *see also Buschauer*, 106 Nev. at 894, 804 P.2d at 1048 (indicating that a continuance may be necessary if the impact statement "presents significant facts not previously raised").

sentence with probation could not occur until after his release from prison on Count I.

Cassinelli argues that his sentence is illegal pursuant to NRS 176A.500(1) because the probationary period exceeds the three-year time period prescribed by the statute for probation on a gross misdemeanor. The State concedes error, and we agree.

NRS 176A.500(1), governing probation and suspension of sentences, provides, "[t]he period of probation or suspension of sentence . . . including any extensions thereof, must not be more than: (a) Three years for a: (1) Gross misdemeanor." Here, the district court sentenced Cassinelli to 14-48 months (or maximum of four years) on Count I. Because Cassinelli's maximum prison sentence is four years on Count I, and the district court sentenced Count II consecutive to Count I, Cassinelli may not be able to begin probation until after he has served four years in prison. This clearly exceeds the three-year limit for a probationary period imposed by NRS 176A.500(1)(a) on a gross misdemeanor.

The Nevada Supreme Court addressed a similar situation in *Wicker v. State*, 111 Nev. 43, 888 P.2d 918 (1995). There, Wicker was convicted of two counts of robbery, rape, and three counts of infamous crime against nature. *Id.* at 44, 888 P.2d at 918. The district court sentenced Wicker to 15 years in prison for robbery and to a consecutive life sentence for rape, as well as to another 15-year term for a second robbery count and three consecutive life sentences for three counts of infamous crime against nature. *Id.* at 44-45, 888 P.2d at 918. The district court suspended the last four sentences and placed Wicker on a five-year probationary period running after parole from prison on the first two sentences. *Id.* at 45, 888 P.2d at 918. Years later, after serving his prison

sentence and while on probation, Wicker violated the terms of his probation. Appearing before a different district court judge at his probation revocation hearing, Wicker contested the legality of his original sentence. *Id.* at 45, 888 P.2d at 919. That district court held that Wicker's sentence was illegal pursuant to NRS 176A.500(1). The district court then removed the period of probation and amended Wicker's judgment of conviction and sentence. On appeal, the Nevada Supreme Court affirmed. *Id.*

The court held that former NRS 176.215(1), now codified as NRS 176A.500, prohibited a period of probation or suspension of felony sentences from exceeding five years. *Wicker*, 111 Nev. at 46, 888 P.2d at 919. The court further reasoned that the statute's limitation period prevented district courts from having perpetual jurisdiction over a defendant:

> Moreover, the purpose behind the limitation period in NRS 176.215(1) is to set some sort of time limit on a district court's power over a particular defendant. Under a sentencing scheme such as that imposed . . . the district court could exercise control over a defendant indefinitely, depending upon the number and length of sentences the defendant serves before he is granted probation.

*Id.* at 47, 888 P.2d at 920.

Although Wicker's period of probation on the last four sentences did not exceed five years, the period of suspension did. *Id.* at 45, 888 P.2d at 919. The court held that Wicker's original sentence conflicted with the statute and was illegal because "*at the time Wicker was sentenced, the last four sentences were inevitably suspended for more than five years.*" *Id.* at 47, 888 P.2d at 920 (emphasis added).

Since the court decided *Wicker*, our Legislature has changed the criminal sentencing structure. Now, NRS 193.130(1) requires district courts to pronounce both a minimum and maximum term for most felony convictions and forbids the courts from imposing a minimum sentence which exceeds 40 percent of the maximum sentence. *Wicker*, however, is still good law and stands for the proposition that a sentence is illegal at its inception if the sentence's probationary period inevitably exceeds the statutory maximum.[10] *Wicker*, 111 Nev. at 47, 888 P.2d at 920; *see also Edwards v. State*, 112 Nev. 704, 707-08, 918 P.2d 321, 324 (1996) (holding that sentences that exceed the statutory maximum are illegal); *State v. Deal*, 186 P.3d 735, 736 (Kan. 2008); 21 Am. Jur. 2d *Criminal Law* § 764 (Supp. 2015). Therefore, although the structure of sentencing criminal defendants has changed since *Wicker*, the court's rationale still extends to Cassinelli's case.

We hold that if any portion of a defendant's criminal sentence is illegal *at the time of the pronouncement of sentencing*, whether the minimum sentence or the maximum sentence, the entire sentence is illegal. To hold otherwise would force district and appellate courts to engage in speculation regarding whether a facially illegal sentence might become legal at some later time depending on whether or not a defendant

---

[10]A majority of jurisdictions further hold that illegal sentences are void. *See, e.g., State v. Halliburton*, 539 N.W.2d 339, 343 (Iowa 1995) ("[I]llegal sentences are not subject to the usual requirements of error preservation and waiver. An illegal sentence is one not authorized by statute; it is void." (citations omitted)); *Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007) ("A sentence imposed in direct contravention of a statute is void and illegal."); *Rodriguez v. State*, 939 S.W.2d 211, 222 (Tex. Ct. App. 1997) ("If the punishment is not authorized by law, the order imposing punishment is void.").

COURT OF APPEALS
OF
NEVADA

(O) 1947B

is granted parole, and if granted, when that parole may occur in the future. Our holding also prevents district courts from exercising perpetual jurisdiction over a defendant, contrary to the rationale expressed in *Wicker*.[11]

Here, the district court sentenced Cassinelli to a prison term of 14-48 months for Count I. The district court then imposed a consecutive 364-day jail sentence for Count II, a gross misdemeanor. The district court suspended the jail sentence on Count II, placing Cassinelli on probation for a term of 36 months (or three years). Because the district court ran Count II consecutive to Count I, Cassinelli may not be placed on probation until after his maximum four-year prison sentence runs on Count I. Because NRS 176A.500(1)(a) limits probation for gross misdemeanors to three years, there is a possibility Cassinelli would begin probation after serving his maximum four-year sentence in prison.[12] Therefore the district court violated the statute's limits regarding the term of probation periods, and thus, Cassinelli's sentence on Count II is illegal.

---

[11]For this reason, we would caution judges against imposing a consecutive probationary period for one crime after a prison sentence on a different count because the period of suspension of probation may violate the statutory limits.

[12]We recognize that, in very limited circumstances, the suspension of probation may not exceed the statutory limitation on either the minimum or maximum sentence imposed as a defendant may, for a multitude of reasons, actually receive probation within the time limit set by statute. However, we do not consider those possibilities when determining whether the sentence, as pronounced, violates the statute because to do so would be speculative, rendering any analysis under *Wicker* difficult if not impossible, and would run contrary to Nevada law and policy.

Accordingly, we remand this case for the district court to impose a sentence on Count II that does not violate NRS 176A.500(1)(a). We vacate Cassinelli's sentence on Count II and remand this case for resentencing on Count II only.[13]

## CONCLUSION

Cassinelli has failed to show reversible error on the majority of his claims. However, we agree with the parties that Cassinelli's gross misdemeanor sentence for Count II, dissuading a person from testifying, is illegal under NRS 176A.500(1). We therefore vacate that sentence and remand this case for proceedings consistent with this opinion.

_____, J.
Silver

I concur:

_____, C.J.
Gibbons

---

[13]In so doing, we caution the district court to be mindful of the Nevada Supreme Court's language in *Miranda v. State*, wherein the court held that to comply with the Double Jeopardy Clause of the Nevada Constitution, "a district court may correct an illegal sentence by increasing its severity only when necessary to bring the sentence into compliance with the pertinent statute, and a correction that increases sentence severity is 'necessary' only when there is no other, less severe means of correcting the illegality." 114 Nev. 385, 387, 956 P.2d 1377, 1378 (1998).

TAO, J., concurring:

Two aspects of the majority opinion warrant further explanation. First, the district court concluded (in its "Order Adjudicating Motion for Election of Treatment," filed June 20, 2014), that, while Cassinelli might have been an alcoholic, he was "not likely to be rehabilitated through treatment" under NRS 458.300 because his underlying problem was not alcoholism but rather a propensity for violence. Among other things, the district court found the following:

> While alcohol played a role in the crimes committed by Defendant, more significant is the propensity of the Defendant to commit acts of domestic violence, acts of sexual perversion on an unwilling partner, violent acts with the use of firearms and little regard for his own children witnessing such acts. Such behavior is not likely to be corrected by alcohol rehabilitation.

I am inclined to agree with the sentencing court's characterization of Cassinelli's personality based upon the sentencing transcript and the abhorrent acts Cassinelli committed against the mother of his children. But I am not sure that the district court's analysis represents a precisely correct application of NRS 458.320. NRS 458.320 permits a sentencing court to deny participation in a treatment program if the court finds that the defendant is not likely to be "rehabilitated" through the program. But the way I read the plain text of NRS 458.320, "rehabilitation" refers to rehabilitation from alcoholism, not rehabilitation from crime, because the treatment program established by NRS 458.300 is one for the "treatment for the abuse of alcohol or drugs," not treatment for general criminal behavior or violent tendencies.

In this case, this distinction makes no difference to the outcome of this appeal because the statute gives the sentencing court wide

latitude to deny participation to anyone who "is otherwise not a good candidate" for the program. NRS 458.320(2). Thus, the district court properly concluded that, even if a defendant is a good candidate for rehabilitation from alcoholism, the criminal sentence imposed upon him need not include participation in a treatment program if his alcoholism was not the driving force behind his criminal behavior.[1] Consequently, the district court did not err in its ultimate conclusion. As a matter of better practice, however, had the district court found that Cassinelli could potentially be rehabilitated from his alcoholism but that he was not otherwise a good candidate for treatment because alcohol was not the driving force behind the violent crime he committed, its findings would have more closely mirrored the words of the statute and the intention of the Legislature.

My second concern arises from the district court's conclusion that Cassinelli failed to "demonstrate any humility necessary for treatment." The problem here is that Cassinelli pleaded guilty by way of *North Carolina v. Alford*, 400 U.S. 25 (1970). The defining characteristic of an *Alford* plea is that, by entering one, a defendant waives his right to proceed to trial and contest the charges against him, but exercises his Fifth Amendment privilege not to incriminate himself by admitting factual guilt. *Id.* at 35-39. Both the United States Supreme Court and the Nevada Supreme Court have made clear that a district court cannot

---

[1]In fact, the "otherwise not a good candidate" language was specifically inserted into NRS 458.320(2), *see* A.B. 413, 64th Leg. (Nev. 1987), in response to concerns that, as previously written without this language, the statute could be read to require sentencing judges to allow participation in alcohol treatment so long as the defendant was an alcoholic even if alcohol had nothing to do with the crime.

 

impose a "harsher sentence" based upon a defendant's refusal to either admit guilt or show remorse when the defendant's plea was by way of *Alford* because doing so violates the defendant's Fifth Amendment privilege against self-incrimination and constitutes an abuse of the sentencing court's discretion. *See Brown v. State*, 113 Nev. 275, 291, 934 P.2d 235, 245 (1997); *see also Mitchell v. United States*, 526 U.S. 314, 327-28 (1999) (sentencing court cannot draw any adverse inference from a defendant's choice to stand silently at sentencing).

Yet, as the majority correctly notes, within the field of psychology generally, and within the field of substance abuse treatment specifically, expressions of humility and overt admissions of guilt are frequently considered prerequisites for admission into treatment programs. Thus, in the absence of a more detailed explanation than that provided in footnote 7 of the majority opinion, the district court's findings could potentially be construed by anyone not familiar with this area of the law to have improperly denied Cassinelli access to such a program because he chose to plead guilty by way of *Alford*, thereby receiving a more severe punishment based upon the exercise of a constitutional right. Therefore, I write to supply additional clarification as well as future guidance to district courts tasked with making sentencing determinations involving NRS 458.300.

As I noted, a court cannot impose a harsher or more severe sentence upon a defendant for exercising a valid constitutional right, including rights specifically reserved when the defendant pleads guilty by way of *Alford*. *See Thomas v. State*, 99 Nev. 757, 758, 670 P.2d 111, 112 (1983) (holding that imposing harsher sentence after trial on defendant who refused to admit guilt was an abuse of discretion because defendant

COURT OF APPEALS
OF
NEVADA

(O) 1947B

3

retained Fifth Amendment right to refuse to incriminate himself while appeal was pending and new trial was still a possibility). Whether the district court did that in this case depends upon whether refusing to permit Cassinelli to participate in a treatment program and sending him to prison instead constitutes a more severe sentence, or merely a refusal to grant leniency to which Cassinelli was not otherwise entitled.

The Nevada Supreme Court has held that the denial of probation based upon a defendant's exercise of his right to refuse to admit guilt was not an abuse of discretion because "[p]robation is a benefit provided by the Legislature in certain sex offense cases only if defendants demonstrate they are not a menace to the health, safety, or morals of others." *Dzul v. State*, 118 Nev. 681, 692, 56 P.3d 875, 882 (2002). In reaching that conclusion, the court distinguished between, on the one hand, a mere denial of benefits or refusal to grant an act of leniency, and on the other hand, the imposition of a penalty such as a longer sentence of years. Citing a series of federal cases, the court noted that while a sentencing court is constitutionally entitled to refuse to grant leniency in response to a defendant's exercise of a constitutional right, it could not impose a harsher penalty for doing so. *Id.* at 692-93, 56 P.3d at 882-83. Because criminal defendants are not entitled to receive probation, but may be granted it as an act of leniency by the sentencing court, no constitutional error occurs if a court decides not to grant probation to a defendant who refuses to admit guilt. *Id.* at 693, 56 P.3d at 883 ("[W]e conclude that probation is a form of leniency.").

In this case, whether the district court erred in refusing to allow Cassinelli to participate in an alcohol treatment program due to his lack of remorse depends upon whether such refusal represented

imposition of a penalty or a mere denial of leniency or a benefit. This, in turn, depends upon whether the consequences for a constitutional invocation operate to deprive a defendant of something to which he is entitled or rather to simply refuse to give him something to which he is not otherwise independently entitled. Two contrasting cases are illustrative. In *Minnesota v. Murphy*, 465 U.S. 420, 422-23 (1984), the Supreme Court held that a probation officer could not revoke a defendant from probation for refusing to confess to a crime where the defendant was statutorily entitled to remain on probation absent proof of a violation. In *Doe v. Sauer*, 186 F.3d 903, 906 (8th Cir. 1999), another court held that an inmate's privilege against self-incrimination was not violated when his parole was denied because he refused to participate in a rehabilitation program that required him to admit guilt because parole is a benefit that involves relief from a penalty that has already been imposed.

In *Dzul*, the Nevada Supreme Court adopted this benefit/penalty analysis. 118 Nev. at 692, 56 P.3d at 882 ("We find the benefit/penalty analysis persuasive."). Applying this test to the facts of the instant case, it appears clear that participation in an alcohol treatment program under NRS 458.300 is a benefit, and refusal to allow participation is not a penalty. The reasons for this are fairly obvious from the plain text of the statute. As an initial observation, under NRS 458.350, the State is not even required to establish any facility for treatment. NRS 458.350 ("The provisions of NRS 458.290 to 458.350, inclusive, do not require the State or any of its political subdivisions to establish or finance any facility for the treatment of abuse of alcohol or drugs."). It should be self-evident that if the State is not required to establish a treatment program, a defendant is not entitled to enroll in one.

Furthermore, even if one has been established, the statute provides that even if the sentencing court deems a defendant worthy of treatment, he must still be separately accepted by the facility. NRS 458.320(6) ("No person may be placed under the supervision of a facility under this section unless the facility accepts the person for treatment."). Thus, no right to participate in a program is guaranteed because participation can be denied by people or entities other than the sentencing judge. Consequently, it appears clear to me that refusing to permit a defendant to participate in such a program constitutes the denial of a benefit to which he is not independently entitled, rather than the imposition of a penalty. Accordingly, I agree with the majority that the district court did not abuse its discretion by refusing to allow Cassinelli to enter such a program in part because he would not confess his guilt or display humility in this case.

_____, J.
Tao

COURT OF APPEALS
OF
NEVADA

(O) 1947B